

**SIGNED this 13th day of December, 2011.**

_____
**JOHN C. AKARD**
**UNITED STATES BANKRUPTCY JUDGE**
_____

# United States Bankruptcy Court

### Western District of Texas
### Midland Division

| | |
|---|---|
| *In re* | BANKR. CASE NO. |
| DANNY LYLE BECKER AND PAMELA KAY BUSSELL BECKER | 09-70173 |
| *Debtors* | CHAPTER 7 |
| KENNETH A. MCCREADY<br><br>    *Plaintiff,*<br><br>        v.<br><br>DANNY LYLE BECKER, JR., ET AL.<br><br>    *Defendants.* | ADV. NO. 09-07021 |

MEMORANDUM OF OPINION

ON KENNETH MCCREADY'S OBJECTION TO THE DISCHARGE AND TO THE
DISCHARGEABILITY OF HIS CLAIM AGAINST DANNY LYLE BECKER, JR.
AND PAMELA KAY BUSSELL BECKER

1

Danny Lyle Becker, Jr., and Pamela Kay Bussell Becker (the "Debtors") filed for relief under Chapter 7 of the Bankruptcy Code on July 20, 2009 in case No. 09-70173 in the United States Bankruptcy Court for the Western District of Texas (the "2009 Case"). On October 20, 2009, Kenneth A. McCready filed a complaint (the "Complaint") in the captioned Adversary Proceeding against the Debtors, Ector County Hospital District d/b/a Medical Center Hospital, Jesse DeLeon and Shawana DeLeon (nee: Shawana Becker). Mr. and Mrs. Becker are the sole remaining defendants in this adversary proceeding since the others have been dismissed.[1]

Mr. McCready's claims in the adversary proceeding have their genesis in December 2004 when the Debtors, who then operated a collection agency, attempted to collect a $20.70 phone bill from Mr. McCready. Through various actions he now claims that they owe him "in excess of $53,000" in damages [Complaint ¶ 13]. His complaint is that the Debtors filing a notice of the claim against him with credit bureaus impeded his ability to rebuild his credit after his recent Bankruptcy. Mr. McCready has handled these matters *pro se* because he has a law degree, but he is not licensed to practice law in any jurisdiction. The testimony did not reveal his employment other than his statement that from time to time he sells items on E-bay.[2] His statement that "[t]his case began, as many of my cases have begun, with a simple little manila folder" [closing argument p. 14], indicates that he engages in lots of litigation.[3]

Mr. Becker is drawing Social Security Disability and is confined to a wheel chair. Ms. Becker, although suffering from medical problems, continues to be employed. In the past, they sold items on E-bay, but have not been able to do so since they were cut off as described below.

Attachment A is a procedural history of the captioned Bankruptcy Case as it relates to Mr. McCready. Attachment B is a procedural history of this Adversary Proceeding.

<u>Background</u>

One of Mr. McCready's complaints is that the Debtors have been frequent filers of Bankruptcy cases. Defendants' 9-28-2011 Proposed Pre-Trial Order [Adversary Docket No. 331] acknowledged that the Debtors had been the subject of four Bankruptcy proceedings in the Western District of Texas and "It appears from a review of District of Colorado case # 95-21576 that the amended Petition filed by the Debtors revealed prior bankruptcies in Colorado (93-12910, 91-20782, 90-14942)." This court's order of December 30, 2009 [Case Docket No. 52] lists the Colorado Case as No. 95-519<u>7</u>6 and states that it was a filing for a personal reorganization under Chapter 13. The order lists the four cases in the Western District of Texas and notes that the first three were Chapter 13 cases while the current case is a Chapter 7. The docket sheets for the first three Western District of Texas cases reflect:

- 02-70018 [the "2002 Case"] was filed January 18, 2002 and a plan of repayment was confirmed on September 29, 2002. On February 13, 2003 the case was dismissed because the Debtors had not made the regular payments they proposed into the plan. The Trustee's Final Report and Account shows that the Debtors paid $7,219.22 into the plan.

---

[1] See Attachment B.
[2] In ¶ 147 of his Complaint, Mr. McCready describes himself as "a professional seller on eBay."
[3] Mr. McCready states that he "has litigated FOIA issues a great deal." Presumably FOIA refers to Freedom of Information Act. *See* the discussion of Superintending and Supervisory Control in Attachment A. In ¶ 110 of the Complaint Mr. McCready refers to his "twenty-seven years of legal representation."

- 03-70437 [the "2003 Case"] was filed June 26, 2003 and a plan of repayment was confirmed February 26, 2004. On September 20, 2005 the Debtors received a Discharge after completion of their Chapter 13 plan.  The Trustee's Final Report and Account shows that the Debtors paid $34,560.00 into the plan.

- 07-70210 [the "2007 Case"] was filed September 22, 2007.  On November 13, 2007 the Chapter 13 Trustee filed a motion to dismiss asserting that the Debtor's unsecured debts exceeded the limits for a Chapter 13 case.  Mr. McCready actively participated in this case by filing a Notice of Appearance and Request for Service of Notice, filing a Motion to Dismiss Case, filing a Motion to Expedite Hearing on his Motion to Dismiss Case, causing the issuance of subpoenas to eBay and PayPal, and filing an objection to the claim of Midland Central Appraisal District.  On November 29, 2007 the court dismissed the case with prejudice to the Debtors filing another Bankruptcy case for 180 days.  On January 25, 2008 the court received and referred to the United States Trustee, a letter from Mr. McCready [Docket No. 50 in the 2007 case] which concluded:

> I've been complaining to everybody and his brother about these unscrupulous frauds, liars and perjurers.  Obviously, a complaint from your office carries much more weight than mine.  Please refer this matter for prosecution; they've learned nothing, and the only consequence of their lies thus far is dismissal of their bankruptcy case.  Big deal!  They deserve jail time for their perjury!

The Debtors operated a collection agency.  Sometime in 2004 they purchased about 300 accounts from a long distance telephone carrier.  In December 2004, the Debtors' company sent Mr. McCready a collection notice for $16.42 plus $4.30 in accrued interest.  Mr. McCready asserts that he wrote a letter denying that he owed the account, but that collection notices continued to arrive.  Apparently, the account was reported as delinquent to credit rating agencies.  Mr. McCready said that he was greatly injured by those credit reports, although he admits that his relatively recent bankruptcy might have had some effect on this credit.  Sometime in 2005 he filed suit in the United States District Court for the Central District of Illinois, Urbana Division, Case No. 05-CV-2141, against Scat Corp. which he identified as a Texas corporation, and the Debtors, whom he identified as the owners of the corporation.  The testimony indicated that the Debtors filed an answer to the suit but did not appear when it was set for trial.  On June 28, 2006 a default was entered against the defendants.  By Order entered September 7, 2006 Mr. McCready's Motion for Default Judgment was granted. In pertinent part, the order stated: "Judgment is entered in favor of Plaintiff and against Defendants Danny Lyle Becker, Jr., Pamela Kay Bussell Becker, and Scat Corp. in the amount of $44,500.00 and the additional amount of $250.00 in costs."  The order also enjoined the Defendants from violating the Texas Finance Code.

On November 17, 2006, Mr. McCready issued a Citation to Discover Assets to Mr. Becker, which Mr. McCready filed in the United States District Court suit in Illinois.  The citation commanded Mr. Becker to "respond in full and under oath, to the attached Interrogatories to discover assets or income not exempt from enforcement of judgment" with respect to the judgment held by Mr. McCready.  Responses were due within 30 days of service.

3

Similar citations were issued to Mrs. Becker and to Scat. Corp. Mr. McCready objected to the responses filed by the Defendants.

The trial: The Midland Bankruptcy docket is not sufficient to have a full time Bankruptcy Judge stationed there. From time to time, the Midland docket has been handled by Bankruptcy Judges from Austin and San Antonio. Because of the long duration of this case, Judge Craig Gargotta initially handled this case. Chief Bankruptcy Judge Ronal King, who is presently handling the Midland docket, issued a number of orders in this case.

On May 23, 2011, Judge King allotted one day for the trial of this matter by tele-video conferencing. The entire day was consumed by Mr. McCready questioning Mr. Becker. Judge King made a number of evidentiary rulings but the trial was not concluded.

Judge King asked Judge Akard to go to Midland to try this case on October 17, 18 and 19. Because of the limited time available, Judge Akard advised the Plaintiff that he would have approximately two days to present his case; the Plaintiff did so. All prior rulings of Judge Gargotta and Judge King in this case were specifically carried forward into the trial, but the trial began anew.

The trial of this matter started with Mr. McCready stating that he had issued a subpoena to PayPal, which he asserted had an office in Texas. Since PayPal had not responded to that subpoena, Mr. McCready asked the court to hold PayPal in contempt of court. The court declined, stating that it would not consider the matter until a later date and not until PayPal had received due process. In spite of the court's statements, Mr. McCready brought that matter up again three times in the two and one half day trial. The court will rule separately on that matter. However, Mr. McCready was not injured by PayPal's failure to respond to the subpoena, because the information he requested had been furnished to him electronically, and he referred to that information on his computer in questioning Mr. Becker.[4]

Because the Plaintiff is *pro se*, the court insisted that he be the first witness. He protested, but he was the first witness. He continued his protestations in his post trial brief. However, being the first witness worked to his benefit because his chronological explanation of his complaints against the Debtors was much better than his rambling pleadings. The bulk of the rest of his case amounted to questioning Mr. Becker. That questioning seemed to have no organization and returned again and again to the same exhibits.

Mr. McCready's testimony explained the collection notice he received from the Debtors, his suit against them in Illinois that resulted in the default judgment, and his efforts to collect that judgment. He feels that the Debtors were not honest and forthright in their responses to his interrogatories which he sent in aid of the judgment. All of these matters occurred between 2004 and 2007 prior to the filing of the Debtor's 2007 Case.

Mr. McCready is sure that the Defendants concealed a great amount of inventory that they used in their eBay business. He introduced records which he received as a result of his subpoena to eBay. He asserted that the Debtors transferred lots of that inventory to their daughter and son-in-law. He was surprised when the Debtors produced what had been

---

[4] Apparently Mr. McCready wanted PayPal to bring the records on paper. He made a similar objection to the information furnished by the United States Trustee. *See*: Superintending and Supervisory Control on Attachment A.

transferred to their daughter and son-in-law; a small box containing several items of inconsequential value. Mr. McCready asserts that the Debtors concealed assets in their prior bankruptcy cases and continue to conceal assets. He offered no evidence of these assertions; only his conclusions.

Other items in his testimony have been included in the discussion of the paragraphs in his Complaint.

Mr. McCready subpoenaed a representative of First Basin Credit Union, formerly Medical Community Credit Union. That representative testified about transactions in 2005 and 2006 with respect to the financing of vehicles. In the first application for financing, Mr. Becker noted that he had filed bankruptcy; nonetheless, the loan was approved. The second application, which had been prepared on a typewriter or a computer, had a box checked which said Mr. Becker had never filed for bankruptcy. Mr. Becker testified that the second application had been filled out by a representative of the credit union and that he had not read it carefully.

The balance of Mr. McCready's case amounted to questioning Mr. Becker.

- Mr. McCready pointed out that in the schedules in the 2009 Case [the current case], the Beckers did not list the account numbers for their creditors, although there is a blank for that on the forms. Mr. McCready asserted this was a major omission. The court is aware that the purpose of having the account numbers is for creditors to more easily locate the account for the Debtor. However, the questioning showed that Mr. McCready's object was to use those account numbers to subpoena records from various creditors; particularly banks.

- There was a great deal of discussion about insignificant bank accounts, most of which had been closed by the time the 2009 Case was filed.

- A great deal of time was spent reviewing several vehicle purchases and sales which the Beckers made between 2004 and 2007.

- Mr. McCready brought out that the Debtors sold some property in California in February 2001, and failed to list that transaction in the Statement of Financial Affairs when they filed the 2002 Case on January 8, 2002. There is no evidence of the amount the Debtors netted from that sale (after liens and expenses), nor is there any evidence that the failure to list that sale adversely affected the creditors in the 2002 Case.

- The Beckers do not have any records of their transactions on eBay or PayPal. They relied on the records which were available from eBay and PayPal until their accounts were cancelled. Since that time, eBay and PayPal have refused to give the Debtors records of their accounts.

- The collection business was closed in 2006.

- Mr. Becker began drawing disability insurance in September 2007.  He qualified for Social Security Disability in October 2007.  He was in Dallas for chemotherapy treatments for five months in 2008.  During that time, his wife sold her wedding ring so she could get enough money to go visit him.  Five of his disks have collapsed.  He can do a small amount of housework but must lay down two or three times a day.  He is taking medication, including pain medication.  He uses a wheel chair when outside the home.

### Mr. McCready's Complaint

The court will review and respond to each of the counts in Mr. McCready's Complaint. Initially, it should be noted that by prior orders, all of the Exhibits to the Complaint have been stricken (see Addendum B).  Paragraphs numbered 1 through 9 of the Complaint contain a statement of jurisdiction and allegations common to all complaints.

Count I – Nondischargeability under 11 U.S.C. § 523(a)(6)[5] (¶¶ 10 through 17 of the Complaint): This section excludes from a discharge in bankruptcy, debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."  Mr. McCready asserts that the Illinois judgment fits that category and that the amount now due him is "in excess of $53,000 including costs, accrued interest and unassessed expenses of Plaintiff's attempts to execute on the judgments which he is permitted by law."

Mr. McCready argues that the Illinois  judgment entered against the Beckers should be found non-dischargeable because "[t]he Beckers caused Plaintiff willful and malicious injury by, but not limited to, falsely publishing reports of delinquent debt to two or more of the national consumer reporting agencies, in violation of the FCRA, and by harassing him by phone and letter in their attempts to collect debt and in refusing to cease collecting debt in violation of the FDCPA and Texas Debt Collections Act." (Complaint, p. 2.) Mr. McCready further argues that the Illinois district court "has already determined that the Beckers caused *willful and malicious injury*, as a necessary element of the claims upon which Plaintiff recovered judgment. That is, the statutory elements permitting award of punitive damages [which Plaintiff received] require proof of such willful and malicious injury, even though the court did not use those words." (*Id.*, at p. 3.)

The Supreme Court has concluded that the word "willful" in section 523(a)(6) "modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In *Kawaauhau*, the Supreme Court distinguished intentional torts–which the Court noted "generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself'"– from negligent or reckless torts, and concluded that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id*. at 61-64.

The Fifth Circuit has articulated the Supreme Court's test as follows: "'[t]he test for willful and malicious injury under § 523(a)(6) … is condensed into a single inquiry of whether there exists "either an objective substantial certainty of harm or a subjective motive to cause

---

[5] The Bankruptcy Code is 11 U.S.C. § 101 *et. seq.*  References to section numbers are to the Bankruptcy Code unless otherwise specified.  Mr. McCready's pleadings refer to § 523(c), but it is evident from the allegations that he is referring to § 523(a).

harm" on the part of the debtor.'" *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. Appx. 360, 361 (5th Cir. 2007) (quoting *Williams v. IBEW Local 250*, 337 F.3d 504, 509 (5th Cir. 2003)). In distinguishing between "willful" and "malicious," courts within the Fifth Circuit have stated that "[c]onduct may qualify as 'willful' for purposes of § 523(a)(6) only if the alleged injury itself is deliberate or intentional, not merely where there is a deliberate or intentional act that leads to the alleged injury. Conduct may qualify as 'malicious' if it is engaged in 'without just cause or excuse.'" *Rapid Settlements, LTD v. Shcolnik*, 2010 U.S. Dist. LEXIS 118792, at *8-9 (S.D. Tex. Nov. 8, 2010) (citations omitted). Finally, it is worth noting that "[m]erely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful." *Guerra & Moore Ltd., LLP v. Cantu (In re Cantu)*, 389 Fed. Appx. 342, 345 (5th Cir. 2010) (unpublished decision).

If, as is often the case, a plaintiff is unable to prove that the defendant subjectively intended to cause harm to the plaintiff, then the question becomes whether the plaintiff can present facts showing an objective substantial certainty of harm. In *Mann Bracken, LLP v. Powers (In re Powers)*, this court elaborated upon the objective prong of the Fifth Circuit's test for willful and malicious injury under section 523(a)(6). 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009). The court stated that

> this prong should be understood as essentially evidentiary in nature and import, a kind of marker or 'badge of intent,'... In other words, objective substantial certainty as described by the [Fifth Circuit] is not actually another way to say 'reckless.'... A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff.

*Id*. Thus, it is clear that reckless disregard of one's duties is not enough for a debt to be deemed non-dischargeable pursuant to §523(a)(6).

The evidence in this case did not reflect that Mr. or Mrs. Becker did anything other than try to collect a very small debt. Mr. McCready's allegations that they harassed him by phone and letter were not supported by the evidence. They did report the delinquent account to one or more credit bureaus but there is no evidence that they were doing more than trying to collect a debt. In sum there is no evidence that they intended willful and malicious injury to him. In addition, Mr. McCready has not presented any evidence of harm, other than his protestations.

Here, Mr. McCready attempts to argue that the judgment from the Central District of Illinois establishes the required elements of a non-dischargeability claim under §523(a)(6). It does not. The judgment merely states: "Judgment is entered in favor of Plaintiff and against Defendants Danny Lyle Becker, Jr., Pamela Kay Bussell Becker and Scat Corp. in the amount of $44,500.00 and the additional amount of $250 in costs. Defendants are enjoined from violating any provision of Title 5, Chapter 392 of the Texas Finance Code, by collecting or attempting to collect consumer debt until each has procured the required surety bond and deposited it with the Texas Secretary of State, by failing or refusing to document or make a record of consumer disputes, by failing or refusing to initiate investigations of consumer disputes, by refusing to cease collection efforts when made aware of a consumer dispute, and by reporting consumer debts to any consumer agency as willfully unpaid which they know or have reason to know are legitimately disputed." (*See* Docket No. 58 in Case No. 2:05-cv-02141-MPM-DGB, U.S. District

Court, Central District of Illinois.) Contrary to Mr. McCready's assertions, this judgment (entered on Mr. McCready's motion for a default judgment) does not make any findings that would satisfy the elements of a section 523(a)(6) non-dischargeability claim. *See. e.g., Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994) ("Collateral estoppel applies in bankruptcy courts only if, *inter alia,* the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is an issue which encompasses the same prima facie elements as the bankruptcy issue—and facts supporting the court's findings are discernible from that court's record.").

For these reasons, the relief requested in Count I of Mr. McCready's complaint is denied.

Count II – Nondischargeability of Debt under 11 U.S.C. §§ 532(a)(4) and (a)(6)  (¶¶ 18 – 36 of the Complaint): A discharge will be denied under section 523(a)(4) for debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."  The substance of this allegation is best expressed in Paragraph 32 which states:

> As fiduciaries, all money and property they converted to their own individual purposes, including payment of SCAT Corp. fund into the Ector County court for Dan's individual debts, constitutes fraud, embezzlement, larceny or defalcation in a fiduciary capacity.

Mr. McCready also asserts that Scat Corp. was administratively dissolved because the Debtors did not file appropriate reports for the corporation.

There was no evidence that the Debtors converted any money of Scat Corp. to their personal use in violation of any corporate obligations.  The money in the registry of the state court in Ector County was awarded, by this court, to the Ector County Hospital District as funds belonging to the district (*see* Addendum B). Furthermore, Mr. McCready has no standing to sue on a claim belonging to Scat Corp.

As noted above, section 523(a)(6) denies the discharge for debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."  For this Mr. McCready points to the Citations to Discover Assets which he sent to the Debtors and to Scat Corp.  In his Plaintiff's Post Trial Brief [Adversary Docket No. 345] Mr. McCready asserts that the court should deny the Debtors' exemptions because of their egregious actions.  He also states that they willfully and intentionally violated the Citation to Discover Assets which was issued by him through the court in Illinois.  He states that the citations were effective from November 22, 2006 through November 21, 2007 [page 5 of Mr. McCready's post trial brief].  The citations [McCready exhibits 6, 7, and 8] require Mr. Becker, Mrs. Becker and Scat Corp. to respond to the attached interrogatories within 30 days.  The nine pages of the interrogatories [McCready Exhibit 15] contain 26 questions, many with numerous subparts and asking for information as far back as seven years.  Responses were filed [McCready exhibits 16, 17, and 18].  Mr. McCready asserts that the responses were not sufficient.

The citations contained the following language:

> **YOU ARE PROHIBITED from making or allowing any transfer or other disposition of**, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtor and from paying over or otherwise disposing of any money

not so exempt, which is due or becomes due to the judgment debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment. (emphasis in original)

Mr. McCready asserts that during the time the citation was in effect the Beckers transferred property in violation of the prohibition. He therefore asserts that they violated a court order and are guilty of willful and malicious injury. He also asserts that the Illinois court would have applied Illinois exemptions rather than the Texas exemptions, even though the Beckers lived in Texas and had no property in Illinois.

The Defendants' Post Trial Response Brief [Adversary Docket No. 346] attaches a copy of the applicable Illinois statute and points out that the statute seems to require that the Citation be served by a sheriff or other officer. In this instance, the Citation was sent by mail. In any event, any restraints which it imposed expired on November 21, 2007. The brief also asserts that the Texas exemptions apply.

Mr. Becker testified that he felt that because the Citation was from Illinois and he was in Texas, the restraints did not apply to him. The court finds that Mr. and Mrs. Becker did not willfully or maliciously violate a court order.

Mr. McCready points to a "predictive dialer," which he states the Debtors listed in their 2007 Bankruptcy schedules as belonging to them, with a value of $85,000. He asserts that later the Debtors said the dialer belonged to Scat Corp. He alleges the Debtors now say that it was stored (apparently when they went out of the collection business) and was damaged. At trial, Mr. Becker credibly testified that the hardware of the dialer had little value and that the software had the value. He said they no longer had a software license and thus the dialer has little value.

Neither these nor any of the other allegations in Count II establish any willful and malicious injury under section 523(a)(6).

None of the allegations in Count II having established a reason for nondischargeability, this count is denied.

Count III – Texas Uniform Fraudulent Transfer Act (¶¶ 37 – 41 of the Complaint): This count is directed at Ector County Hospital District. This court has previously ruled in favor of the district (see Addendum B).

Count III (sic) – Texas Uniform Fraudulent Transfer Act (¶¶ 42 – 64 of the Complaint). This count is directed at Jesse Deleon and Shawna Deleon. This court has previously dismissed them from this adversary proceeding (see Addendum B).

Count IV – Texas Uniform Fraudulent Transfer Act (¶¶ 65 – 80 of the Complaint): This count is directed at Shawna Deleon. This court has previously dismissed her from this adversary proceeding (see Addendum B).

Count V – Texas Uniform Fraudulent Transfer Act (¶¶ 81 – 90 of the Complaint): Mr. McCready's claims against the Debtors on this count were denied by this court [see Addendum B]. To the extent that in this count Mr. McCready asserts a lien, the court determined that he does not have a lien [See Addendum B].

<u>Count VI – Nondischargeability of Debt under 11 U.S.C. § 523(a)(2), (a)(6) and (a)(7)</u>  (¶¶ 92 – 107 of the Complaint):  This complaint is directed against the Defendants in relation to what Mr. McCready refers to as the False Claims Act case in the United States District Court for the Western District of Texas, Case No. 08-CV-10 [the "Qui Tam case"].  Since that matter is pending in the United States District Court, it is not appropriate for consideration in this Adversary Proceeding.

<u>Count VII – Objection to Discharge under 11 U.S.C. § 727(a)(1) – (7)</u> (¶¶ 108 – 154 of the Complaint):

Paragraph 108 states:

Plaintiff-Objector incorporates all other allegations of this document AND ITS attachments as if the same were set forth fully here, **regardless whether the Court strikes any part thereof** (emphasis added).

This implies that Mr. McCready felt that some parts of his Complaint would be stricken, and he is seeking to override the court's orders in that regard.  He is not successful.  As noted, all exhibits to the Complaint have been stricken [see Addendum B].

Paragraphs 109 through 117 are self-serving, and often improper, statements which do not add anything to the Complaint.  In ¶ 110 Mr. McCready states: "The Beckers are worst liars and deceivers this Objector has encountered, in twenty-seven years of legal representation."[6]

In ¶ 118, Mr. McCready asserts that the Debtors have not furnished a proper certificate of credit counseling and says that "the Court may deny them a discharge according to the plain and unambiguous language of Rule 4004(c)(1)(H).[7]  First, whether the Debtors have furnished a proper certificate of credit counseling is no concern of his; it is a matter for the clerk and the court.  Second, Mr. McCready mischaracterizes Rule 4004(c)(1)(H) of the Federal Rules of Bankruptcy Procedure.  Discharges can only be denied under section 727; the rules of procedure cannot add to those grounds.  Further, the rule only says that the court will not issue a discharge when the proper certificate of counseling has not been filed.  There is a great difference in not issuing a discharge and denying a discharge, because the denial of a discharge has many long lasting ramifications.

In ¶ 119 Mr. McCready asserts that the Debtors are not married to each other and thus this should be a partnership case.  No evidence on this matter was offered at the hearing.  The court assumes that Mr. & Mrs. Becker were married in an appropriate ceremony, but even if they were not, their holding out as husband and wife is sufficient for a common law marriage in Texas.

In ¶ 120 – 122 Mr. McCready again asserts that the Debtors are liars and objects to the fact that their 2007 Case was dismissed with prejudice for only 180 days.  He feels that it should have barred the Debtors from ever filing another bankruptcy case.  These paragraphs do not assert any grounds for denial of the discharge in this case.

---

[6] At trial, Mr. McCready acknowledged that he is not licensed to practice law in any jurisdiction.
[7] References to Rules are to the Federal Rules of Bankruptcy Procedure unless otherwise indicated.

In ¶ 123 Mr. McCready asserts that the Debtors did not disclose all of their "aliases" including their eBay trade names.  If there were any such omissions in this case, they were not material.

In ¶ 124 Mr. McCready objects to and asserts that they have listed corporate debts in their personal Bankruptcy petition.  Many careful lawyers have the owners of a small corporation list the debts of the corporation in the individual's Bankruptcy petition so that if the creditors feel the owner has any personal liability on the corporate debts, that matter can be resolved.  Consequently, there is no harm in their listing corporate debts in their personal Bankruptcy case.

In ¶ 125 Mr. McCready objects that the Debtors scheduled as an asset their 100% ownership in Mapnad, Inc., because he asserts there is no such corporation.  It is the function of the Chapter 7 Trustee to determine if that is an asset of this bankruptcy estate.  Mr. McCready also asserts that the Debtors own various entities in Colorado which they have not disclosed.  The testimony shows that Mr. Becker was listed as the incorporator of some corporations while he was living in Colorado, but he credibly testified that he never had any stock in those corporations or that they had no assets.  The Debtors have been in Texas for a number of years.  The court finds that any omission in that regard is immaterial.

In ¶ 126 Mr. McCready makes basically the same allegation he made in ¶ 125 about other corporations.  The court finds that any omission in that regard is immaterial.

In ¶ 127 Mr. McCready asserts that eight years ago the Debtors prosecuted a bankruptcy proceeding in Colorado under Mrs. Becker's name and that "they've never told the trustee about that either."  Mr. McCready does not give the case number, but Colorado bankruptcies have been disclosed in this proceeding.   No evidence of injury was offered in connection with this matter.

In ¶¶ 128 and 129 Mr. McCready states that in their 2007 case one or more of their companies owned debt that totaled nearly $32 M, and now they claim that debt is worthless.  Mr. McCready asserts that the debt is worth at least one-tenth of one cent on the dollar or $34,000.  Mr. McCready offered no evidence of the value of that debt; just his speculation.  The Beckers owned a collection agency and apparently purchased large amounts of delinquent debt.  They are no longer in the collection agency business.  No doubt they collected the accounts which were collectable.  By this time it would seem that there would be statute of limitations problems with any remaining debt.  Under those circumstances, the court cannot find that the accounts have any value.

In ¶ 130 Mr. McCready asserts that since their 2007 Case the Debtors have failed to keep records of their collection business.  He mentions one specific instance, but no testimony was offered on that matter. Mr. Becker testified that they ceased the collection business in 2006.

In ¶ 131 Mr. McCready makes basically the same allegations with respect to Scat Corp. which he made in ¶¶ 128 and 129 with respect to the Debtors.  The result would be the same.

In ¶ 132 Mr. McCready states that in their 2002 Case the Debtors did not disclose that they sold property in California in February 2001.  As noted above, that case was dismissed.  The relevancy of that omission to the current case was not shown.

In ¶ 133 Mr. McCready alleges that the Debtors sold a $115,000 rental house in Midland in 2007 and that they did not list the sale of that property in the Statement of Affairs in their 2007 Bankruptcy Case.  The relevancy of that omission to the current case was not explained.

In ¶ 134 Mr. McCready states: "They (sic) Beckers asked the Ch. 13 Trustee for permission to incur $94,000 in debt in refinancing their home in the 2003 Case.  He granted it.  They violated that trust, by incurring $104,000 in non-emergency consumer debt."  No evidence was offered on this matter and it is not relevant to the current case.

In ¶ 135 Mr. McCready states that the Debtors valued their current home at $130,000 but that the "Midland Appraiser" values it at $154,000.  He states that the home is subject to a lien for $105,000.  The Debtors' Schedule B filed in this case shows the value of the property at $134,400 and notes that "Value is total assessed tax value."  The lien is shown at $105,575 [Case Docket No. 22].  The property is claimed as their exempt homestead.  Any questions about value would be for the Chapter 7 Trustee to address; not Mr. McCready.

In ¶ 136 Mr. McCready says that Mr. Becker perjured himself when he said he had no education beyond high school.  Mr. McCready draws that conclusion because Mr. Becker at one time listed a $6,900 student loan debt.  Mr. Becker testified that he completed high school but had no other degrees.  He received a Microsoft certification in January 2007.  He testified that he refunded to the lender most of the $6,900 student loan funds.

In ¶¶ 137, 138, 140 Mr. McCready complains about the Debtors' 2005 GMC van.  The Debtors scheduled that van, with attached wheelchair lift, at $15,075.00 on Schedule B in this Bankruptcy case.  They claimed $1,220.00 of that value as exempt under section 522(d)(2).  Mr. McCready asserts that they undervalued the van on several occasions.  He also asserts that they committed a fraud because they traded in two vans on the purchase of the 2005 van, but they only received $8,000 for their trade-ins, when the dealer turned around and sold the two traded in vans for $15,000.  There is no evidence of the resale of the vans, but assuming these allegations are true, there is no evidence that the Debtors profited from the resale of the vans or that they engaged in any collusion with the dealer.

In ¶ 139 Mr. McCready accuses the Debtors of concealing property in their 2003 and 2007 bankruptcy cases and of making in excess of $100,000 in cash expenditures.  This statement is not supported by the evidence and any relevancy of it to the current case is not explained.

In ¶ 141 Mr. McCready opines: "The Beckers are lying about the value of nearly everything, if not every single thing they've scheduled in their current schedules, as they did in their 2007 schedules."  This statement is not supported by the evidence.

In ¶ 142 Mr. McCready notes that the Debtors' 2009 schedules are more detailed than their 2007 schedules and concludes that the Debtors either acquired lots of property between 2007 and 2009 or that they were lying on the 2007 schedules.  The 2007 Case was dismissed (see above) and the Debtors cannot be faulted for trying to be more precise in their 2009 Case.

In ¶ 143 Mr. McCready notes that the Debtors scheduled that they have 780 CDs.  He opines that the average retail price would be $15.00 each and thus the collection cost over $12,000.  He therefore objects to the CDs being listed with other items at a total value of $5,000.

He asserts: "This is fraud, not just undervaluing assets!" Mr. McCready did not present any evidence of the acquisition or his method of valuing the CDs. Mr. Becker said that many of them were purchased used. The test to be used in the schedules is the current market value, and it is common knowledge that the price of used items at garage sales is much less than the original cost. The court cannot find the listing of the CDs and other items at $5,000 constitutes fraud.

In ¶ 144 Mr. McCready states: "Plaintiff-Objector has discovery outstanding in EACH of his cases which seeks to learn **what the Beckers have spent their money on in the last roughly seven years.** It would certainly behoove the Beckers to answer that discovery. Among the answers will be a listing of everything that they've purchased, the make, model, age, description, price new, value and basis for that valuation, etc." (emphasis added). The issue is the assets the Debtors had and the liabilities they owed on the date they filed their 2009 Case. Expecting them to go back and list every purchase for the last seven years is clearly not necessary and certainly overburdening. The court seriously doubts that Mr. McCready could give a list of all of his purchases for the last seven years.

In ¶ 145 Mr. McCready objects to the fact that the Debtors listed their assets and their valuation of the assets on their schedules. He states that there is "no basis in honesty or in fact for that number." The Debtors provided the information required in the schedules; they are not required to get an appraisal of the items on their schedules unless requested to do so by the Chapter 7 Trustee.

In ¶ 146 Mr. McCready talks about subpoenas he has issued in another case "to several of the Becker financial institutions" and objects to purchases before the 2007 Case. Actions taken in another case are not pertinent to this case.

In ¶ 147 Mr. McCready objects to purchases by the Beckers before their 2003 and 2007 Bankruptcy cases. Those issues are not relevant to the 2009 Case. Mr. McCready concludes by stating: "And, take this from a professional seller on eBay, the Becker purchases were and are worth substantially more than they have ever valued them at."

In ¶¶ 144 and 148 Mr. McCready asserts that the Debtors were regularly selling $700 to $1,000 per day of items on eBay. At trial he asserted that they had over $100,000 in inventory which they sold on eBay. He presented an exhibit which showed a listing of a number of items on eBay. Mr. Becker testified that they regularly bought things on eBay and at other places and sold the items on eBay. He testified that they did not maintain an inventory of items to sell. He stated that all eBay required was that they be able to get the item if one was ordered. He talked about plastic snakes which they offered on eBay for $1.99 and could purchase at a much lower price at a local craft store, if and when they were ordered. Mr. Becker also testified that his and Mrs. Becker's accounts had been cancelled by eBay and PayPal, which is used to handle the financial transactions conducted on eBay. The reason given to them for the cancellation was that the records of their accounts had been subpoenaed. He stated that they could no longer make transactions on eBay.

In ¶ 149 Mr. McCready states:

Plaintiff hasn't been able to get any subpoenas honored for the Beckers; once this Court allows discovery and he's able to employ compulsory processes, he imagines he'll find substantial evidence of luxury expenditures in the two years before this filing. In the Beckers (sic) previous

13

bankruptcies, while they were claiming they had no money to pay back their just debts, they had enough money to take the family to Las Vegas, Lake Tahoe, it looks, Miama (sic) for a Carnival Cruise (they flew there) and Disney World in Orlando, Fla.  They spent $10,000's on such frivolous purchases, and have failed to account for them.

Mr. Becker testified that, when they were in the collection business, they went to meetings of organizations of persons engaged in that business for education and networking.  He acknowledged that the meetings were in nice places.

Mr. McCready does not point to any section of the Bankruptcy Code which denies a discharge to a debtor because the debtor made unwise financial decisions or even engaged in lavish expenditures prior to filing unless he can show an intent to hinder, delay, or defraud creditors.  There was no such showing in this case.  Further, the items about which he complains occurred prior to the 2007 Case and not just before the current case.

In ¶ 150 Mr. McCready starts out by saying: "Perhaps the thing that is **most galling** to this Plaintiff-Objector is that he did not have the opportunity to examine the Beckers in their 2007 341 meeting of creditors."[8] (emphasis in original)  The docket reflects that he actively participated in the 2007 Case.  However, if he did not get an opportunity to examine the Beckers at the 341 meeting, he could have availed himself of other opportunities.  In any event, this paragraph relates to the 2007 Case and has no bearing on the current case.

In ¶ 151, Mr. McCready continues his complaints about the 2007 Case from ¶ 150.  In the latter part of paragraph of ¶ 151 he accuses Mrs. Becker of lying in the 341 meeting in the 2009 Case.  No evidence on this complaint was offered at the hearing on this matter.

In ¶ 152 Mr. McCready states:

Lastly, inasmuch as the money they claim an exemption in from the SSDI benefits is "stolen" money, the Court should deny this putative exemption.

Then Mr. McCready gets into a discussion of the Qui Tam case that he filed against the Beckers.  That matter is in the United States District Court and is not a proper subject for this Complaint objecting to the Debtors' discharge.

In ¶ 153 Mr. McCready again complains that Mr. Becker is drawing Social Security Disability payments.  As noted, that is not a matter which should be considered in this bankruptcy case.

In his concluding paragraph, ¶ 154, Mr. McCready states:

All of the foregoing shows that the Beckers have made one or more false oaths or accounts, in presentation of one or more false claims, and sec 727(a)(4) suggests these false oaths, accounts and claims permit the Court to deny them the discharge they seek for the eighth (8th) time!

Although Mr. McCready mentioned all sections of section 727(a) in the opening portions of his objections to the discharge, this paragraph indicates that he is basically relying on section

---

[8] Meetings of creditors are held pursuant to § 341 of the Bankruptcy Code and are thus commonly referred to as 341 meetings.

727(a)(4).  In the prayer which follows this paragraph, Mr. McCready asks the court to deny the Debtors discharge and to permanently enjoin them from filing bankruptcy again.

Statute:

Titled "Discharge," § 727(a) governs the requirements that must be met for a debtor's discharge to be denied.  It provides:

(a)  The court shall grant the debtor a discharge, unless—

(1) the debtor is not an individual;

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case--
(A) made a false oath or account;
(B) presented or used a false claim;
(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case--

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;
(B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

(C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify;

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case under this title or under the Bankruptcy Act, concerning an insider[.]

Under Rule 4005, "the plaintiff has the burden of proving the objection." This rule applies to both the burden of proof as well as the burden of going forward with evidence. *Martin Marietta Materials Southwest, Inc., et. al.  v. Robert Lee, et. al. (In re Lee)*, 309 B.R. 468, 476 (Bankr. W.D. Tex. 2004). If evidence establishes any of the required grounds, the burden then shifts to the defendant to come forward with evidence explaining his or her conduct. *Id.* However, due to the policy of the Bankruptcy Code in providing a debtor with a 'fresh start' via the discharge, "the provisions of section 727(a) are to be liberally construed in favor of the debtors, and strictly construed against the party objecting to discharge." *Id.* "Courts should deny discharge only for very specific infractions." *Id.* (citations omitted).

Discussion of Objections to the Discharge:  At the beginning of the portion of his Complaint concerning objections to the discharge, Mr. McCready listed § 727(a)(1)-(7).  His discussion is not coordinated by subsection and he mentions only a few of them.  However, to be complete, the court will discuss each of the subsections.

§ 727(a)(1)  only allows individuals to receive a discharge.  The Beckers are individuals, so they can receive a discharge.

§ 727(a)(2) denies the discharge to a debtor who, "with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed" (or permitted that to be done)  property of the debtor within one year before the filing of the bankruptcy or after the filing of the bankruptcy petition.  Mr. McCready feels that these Debtors have done that, but he has not proven any such action with respect to the current case (the court will discuss prior cases below) and there is no evidence that the Debtors had any intent to hinder, delay or defraud a creditor or an officer of the estate.

§ 727(a)(3) denies a discharge to debtors who do not keep or preserve books, "unless such act or failure was justified under all of the circumstances of the case."  The Debtors closed their collection business in 2006.  They stored the records, but over time most of the records became damaged or destroyed.  It is doubtful that records of their collection business prior to 2006 would have any bearing on their 2009 Case.  There is no evidence that Mr. McCready made any attempt to view the records that the Debtors might still have.  The access to their records of eBay and PayPal transactions are no longer available to them because those records have been subpoenaed; which Mr. McCready admitted doing in the 2007 Case and apparently did again in the 2009 Case.  The court finds that the Debtors failure to have records is justified under all of the circumstances of this case.

§ 727(a)(4) denies a discharge to a debtor who "knowingly and fraudulently, in or in connection with a case" makes a false oath or account, files a false claim, attempts to obtain an advantage by acting or forbearing to act, or withholds items from an officer of the estate. In this case, there is no evidence of filing a false claim, attempting to obtain an advantage or withholding items from an officer of the estate. Mr. McCready admits that the Statement of Financial Affairs and Schedules in the 2009 Case are much more specific than they were in the 2007 Case. The only omission the court can recall him pointing to in the schedules in the 2009 Case is the omission of the account numbers for the creditors. Mr. McCready wanted those so he could subpoena the creditors. There is no evidence that the creditors or the Chapter 7 Trustee complained about that omission.[9]

> The elements a plaintiff must satisfy to prevail under this section include the following:
>
> To establish a false oath, the creditor must show that '(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.' *In re Pratt*, 411 F.3d at 566 (citing *Beaubouef*, 966 F.2d at 177).
>
> The objecting party must show by a preponderance of the evidence that the debtor made a false oath or account with either the intent to defraud or with reckless indifference to the truth. *In re Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001); *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

*Comerica Bank v. Rajabili (In Re Rajabali),* 365 B.R. 702, 714 (Bankr. S.D. Tex 2007).

Mr. McCready has not met that burden and thus has not established that the Debtors' discharge should be denied under section 727(a)(4).

§ 727(a)(5) denies the discharge to a debtor who has failed to explain satisfactorily the loss of assets or deficiency of assets to meet his liabilities. Mr. McCready argues that the Debtors had a large inventory of items for sale on eBay. He offers nothing but his speculation on this matter and Mr. Becker's testimony shows that the Debtors did not maintain such an inventory. The court has already addressed his complaints about the collection accounts which they listed in their 2007 Case. Consequently, Mr. McCready has not carried his burden to prove that the Debtors' discharge should be denied under this section.

§ 727(a)(6) denies the discharge where the debtor improperly refuses to testify in the case. The Debtors have testified in this case so there is no basis for denying their discharge under this section.

§ 727(a)(7) denies the discharge of a debtor who "has committed any act specified in paragraph (2), (3) (4) (5) or (6) on or within one year before the date of the filing of the petition

---

[9] Additionally, as recognized by Judge Gargotta in *Partners in Family Medicine v. Nolen*, "there are no such things as perfect schedules." Case No. 07-01008, at p. 6 (Bankr. W.D. Tex. Dec. 18, 2007) (citing *The Cadle Company v. Guenther (In re Guenther)*, 333 B.R. 759, 768 (Bankr. N.D. Tex. 2005) for the proposition that "[i]t may be close to impossible to produce Schedules and SOFAs that contain no mistaken information, and bankruptcy papers with mistakes are not, alone, enough to bar a debtor's discharge").

or during the case, in connection with another case under this title or under the Bankruptcy Act, concerning an insider."

Case law seems to agree that the Defendants needed to have performed one of the acts prohibited in section 727(a)(2)-(6) within one year prior to the filing of the present bankruptcy case. *Oyedele v. U.S. Trustee (In re Oyedele)*, 1998 U.S. App. LEXIS 648, at *4 (9th Cir. Jan. 15, 1998) ("The action that must occur within one year preceding the filing of the current petition is not the filing of the previous bankruptcy petition, but 'any acts specified' in the relevant subsections of the statute."); *Giant Eagle, Inc. v. Monus (In re Monus)*, 294 B.R. 707, 716 (Bankr. N.D. Ohio 2003) *aff'd* 294 B.R. 707 (6th Cir. 2006) (after finding that the debtor had declared bankruptcy on September 25, 1992, stating that the court must determine whether the debtor committed any acts specified in § 727(a)(7) "from September 25, 1991 to September 25, 1992."); *Whiteside F.S., Inc. v. Siefkin*, 46 B.R. 479, 481 n. 1 (N.D. Ill. 1985) (noting that House and Senate Judiciary Reports regarding the Bankruptcy Reform Act of 1982 both provide, in connection with section 727(a)(7): "The seventh ground of discharge [§ 727(a)(2) - (6)] during the year *before the debtor's case in connection with another bankruptcy case concerning an insider.*'") (*citing* H. Rep. No. 95-595 to accompany H.R. 8200, 85th Cong., 1st Sess. (1977) p. 385; S. Rept. No. 95-989 to accompany S. 2266, 95th Cong. 2nd Sess. (1978) p. 99, U.S. Code Cong. & Admin. News 1978, pp. 5787, 5885, 6341.")

The foregoing citations indicate that the reference to a prior bankruptcy case only relates to a prior bankruptcy case of an insider.  Mr. McCready asserts that there is a doctrine of continuing concealment which holds that if an asset is concealed in one bankruptcy by a debtor, it is, under this section, considered concealed in the Debtors' subsequent bankruptcy.  Mr. McCready asserts that these Debtors concealed assets in their prior bankruptcies and thus they should be denied a discharge in the current case.  However, in spite of his allegations, he did not establish by a preponderance of the evidence that they knowingly concealed any assets in their prior bankruptcies.  Thus he has not proven that these Debtors' discharge should be denied under this section.

Other matters:

(1) Mr. McCready asserts in his Complaint that the Debtors have done such egregious acts that they should be denied all exemptions.  In spite of his inflammatory rhetoric, he has failed to establish that they have done any acts worthy of having their exemptions denied.  Thus, his request in this regard is denied.

(2) Mr. McCready asks this court to permanently enjoin the Debtors from filing any further bankruptcy proceedings.  He thinks that they have visited the Bankruptcy Court most too often.  It is true that they have filed a number of bankruptcy cases, but most of those have been efforts to repay their bills under Chapter 13 of the Bankruptcy Code.  Congress placed in the Bankruptcy Code various safeguards to prevent abuse of the bankruptcy system.  Those safeguards are enforced by the United States Trustee and the case trustees.  The court does not feel that the Debtors have abused the system, and in view of the Congressional safeguards, Mr. McCready's suggestion is not appropriate and will not be granted.

Perhaps Mr. McCready's reason for pursuing this adversary proceeding is best expressed in his closing argument where he stated:

> I consider this part of my social compact. I owe the people of the State of Texas and the country the obligation to put this on the record that these people are deceivers, tricksters, frauds, and serial bankruptcy abusers (closing argument p. 14).

For the reasons stated in this memorandum, Mr. McCready's Complaint will, in all things, be denied.  Judgment accordingly.

#######

# ATTACHMENT A

<u>Procedural History of Bankruptcy Case 09-70173 as it relates to Kenneth A. McCready</u>

On July 20, 2009 a voluntary petition for a liquidation under Chapter 7 of the Bankruptcy Code was filed by Danny Lyle Becker, Jr. and Pamela Kay Bussell Becker.

On August 17, 2009, Mr. McCready filed a Notice of Appearance and Request for Service of Notice [Case Docket No. 21].

A meeting of creditors pursuant to §341(a) of the Bankruptcy Code[10] was held on August 18, 2009.  The meeting was conducted by the Chapter 7 Trustee, J. Marshall Miller.  Mr. McCready attended that meeting by telephone (see Case Docket No. 113),

<u>Claims:</u>  On December 23, 2009 Case Docket No. 48 states: "Trustee's Request for Notice of Assets – Proofs of Claim Due 3/24/2010;" however the document at that number is the Clerk's notice to file claims by 3/24/2010.  That notice was mailed to the creditors on December 30, 2009 [Case Docket No. 53].  Apparently the request to file claims was in error because on January 5, 2010 the trustee filed his report stating that there would be no distribution to unsecured creditors in this Bankruptcy case [This is reflected on the Docket between items 58 and 59].  In response to the notice to file claims, 17 have been filed, including 4 by Mr. McCready.  All of Mr. McCready's claims were filed on March 24, 2010.  They are:

- Claim No. 13 is for $52,247.14 out of a judgment of the U.S. District Court for the Central District of Illinois in Case No. 05-2141.  It is alleged to be secured by a citation to discover assets on property valued at $1M; there is no description of the property.  A judgment for $44,500.00 plus $250 in costs is attached to the claim. [This claim was declared unsecured – see below]
- Claim No. 14 is an unsecured claim for $1M based on a False Claims Act Suit in the Western District of Texas No. 08-CV-10 [the Qui Tam suit].  No judgment or other proof is attached to the claim. [This claim was disallowed – see below]
- Claim No. 15 is an unsecured claim for $156,000 based on allegations in Adversary Proceeding 09-7021 [the captioned adversary proceeding].  No documents are attached to the claim. [This claim was disallowed – see below]
- Claim No. 16 is an unsecured claim for $38,877 based on False Claims Act Suit in the Western District of Texas No. 08-CV-10 [the Qui Tam suit]. No documents are attached to the claim.  [This claim was disallowed – see below]

On May 3, 2010 the Debtors objected to Mr. McCready's claims 14, 15, and 16. [Case Docket Nos. 81 – 83].  Claim No. 14 was disallowed by order dated June 1, 2010 [Case Docket No. 84].  Claim No. 15 was disallowed by order dated June 1, 2010 [Case Docket No. 85].

_____

[10] The Bankruptcy Code is 11 USC §101 *et. seq.*  References to section numbers are to the Bankruptcy Code unless otherwise specified.

Claim No. 16 was disallowed by order dated June 1, 2010 [Case Docket No. 86]. On June 21, 2010, Mr. McCready filed "Kenneth McCready's Federal Rule 60 and FRBP 3008 Motion to Vacate Orders of June 1, 2010, Motion to Reconsider Claims and, in the alternative, Motion for Leave to Amend 'Informal' Claims" [Case Docket No. 90]. On August 12, 2010, in a very thorough order, the court denied that motion [Case Docket No. 91].

On September 7, 2010 the Debtors filed an objection to claim No. 13 [Case Docket No. 93]. Mr. McCready filed a response on September 28, 2010 [Case Docket No. 94]. The court held a hearing on the objection on November 9, 2010 and decided that the objection to claim would be combined with Adversary Proceeding 09-4021 [This adversary proceeding. An order carrying out the oral ruling was entered on November 17, 2010 [Case Docket No. 97]. This claim was found to be unsecured by order dated March 10, 2011 [Adversary Docket No. 200]. See, also, "Mr. McCready's assertion that his claim is secured" in Attachment B.

Mr. McCready's Claim that He Holds a Lien: On September 22, 2009 Mr. McCready filed a Motion for Orders Confirming Termination of Automatic Stay under 362(c) [Case Docket No. 27]. The first paragraph of that four page motion states:

> The filing of any bankruptcy petition requires the Debtor to honestly disclose his properties and debts. The Beckers have been in or preparing for bankruptcy for the last twenty years. They are not "honest but unfortunate" debtors needing relief of this proceeding. They are frauds, deceivers and tricksters. They perjure themselves without conscience. Everything they do and everything they have done is calculated to deceive or defraud. Movant prays the Court won't let them get away with it this time around.

The motion asserts that the Debtors have failed to list him as a secured creditor in their Bankruptcy schedules; that they are fraudulently receiving Social Security benefits; and alleges numerous other claims that are made in this adversary proceeding. The motion also alleges that the Debtors and their attorney have committed fraud by omitting assets. On November 24, 2009, the court held a hearing on the motion and took the matter under advisement. On December 30, 2009 the court issued its order denying the motion [Case Docket No. 52] in which it pointed out that a judgment creditor generally does not have a claim against exempt property in Texas, but the court made "no findings as to the validity or priority of McCready's judgment lien." On January 7, 2010, Mr. McCready filed a Rule 59 Motion to Alter or Amend Order of December 30, 2009 [Case Docket No. 60]. On January 13, 2010, the court denied the motion to alter or amend [Case Docket No. 62].

On March 11, 2011 Mr. McCready filed another motion to reconsider the December 30, 2009 order which is Case Docket No. 52 [Docket No. 104]. In his four page motion, Mr. McCready, in addition to making a number of disparaging and inappropriate remarks about the Debtors and their attorney, asks the court to reconsider its order of December 30, 2009, again asserting that he has a lien on all of the Debtors' personal property. His motion does not make any mention of the court's November 17, 2011 order at Case Docket No. 97, which said that the question of a lien would be determined in this Adversary Proceeding. On April 21, 2011 The Debtors filed a response to that motion pointing out that the matter has already been ruled upon by the court [Case Docket No. 123]. On April 21, 2011 the court denied the motion to reconsider [Case Docket No. 126].

2

On March 11, 2011 the Debtors filed a Motion for Adjudication on Objection stating that on March 10, 2011 they received a default judgment in the adversary proceeding that determined that Mr. McCreday did not have a lien.  On March 11, 2011 the court ordered that the claim of Mr. McCready that he holds a lien would be determined at the trial in this adversary proceeding as previously ordered in Case Docket No. 97 [Case Docket No. 107].  In issuing that order the court apparently overlooked the fact that Mr. McCready's claim had already been determined to be unsecured in the Adversary Proceeding.

Objections to the Discharge and Dischargeability:  The Bar Date for filing objections to the discharge and dischargeability was October 19, 2009, but on October 16, 2009 Mr. McCreday sought an extension of time to file such objections [Case Docket No. 32].  The motion also asked to examine the Debtors under Federal Rule of Bankruptcy Procedure 2004.[11]  The motion was granted on November 9, 2009 [Case Docket No 38] by an order submitted by Mr. McCready.  The order stated:

> The Movant is granted thirty (30) days following the conclusion of the 2004 Examinations and complete disclosure by the Debtors in which to file any Objections to Debtors' Exemptions, and any Complaint under 11 U.S.C. 523, 707, and 727.

On December 21, 2009 Mr. McCready filed a motion to clarify that order [Case Docket No. 46] in which he acknowledges that he forgot to put in a deadline for the filing of discovery responses, asserts that the Debtors have not been cooperative in discovery, and requests a scheduling order.  On January 5, 2010, the Debtors' attorney filed a response to the motion [Case Docket No. 58] which agreed that the order set no discovery deadline and denied that the alleged requests for information had been received by Debtors' counsel.  On February 23, 2010, the court held a hearing on the motion for clarification.  As a result of that hearing, on March 10, 2010, the Court signed an Order Granting Motion for Clarification of Prior Order [Case Docket No. 73] in which it stated: "IT IS ORDERED that the Defendants answer all discovery requests as required by the Federal Rules of Civil Procedure as incorporated in the Federal Rules of Bankruptcy Procedure.  This order is limited to discovery pending in this case and adversary proceeding number 09-7021."

Motions for Contempt:  On December 21, 2009, Mr. McCready filed a Motion for Order to Show Cause Why Attorney Jeanne Morales Should not be Held in Contempt or Otherwise Punished [Case Docket No. 47].  Ms. Morales is the attorney for the Debtors.  The four page motion makes numerous lengthy allegations that Ms. Morales has lied and concealed information from the court.  Among those is her representation that Mr. McCready's claims against the Debtors are unsecured, when he feels that his claims are secured. On January 26, 2010, the court held a hearing on that motion and denied the motion for the reasons stated on the record.  On January 29, 2010 the court issued its order denying that motion [Case Docket No. 66].

On February 25, 2011, the Debtors filed a motion to hold Mr. McCready in contempt of court [Case Docket No. 100].  The motion alleges that Mr. McCready violated the automatic stay of §362(a) by filing, after the commencement of this Bankruptcy case, various motions in the

---

[11]References to Rules will be to the Federal Rule of Bankruptcy Procedure, unless otherwise noted.

Qui Tam case which he filed in January 2008 in the United States District Court for the Western District of Texas styled *United States of America v. Becker et al* Case No. MO-08-CV-010. On March 10, 2011 Mr. McCready filed a 13 page answer, a large portion of which was devoted to inappropriate criticism of the Debtors and their counsel. He requests a jury trial and a court appointed counsel to assist him [Case Docket No. 105]. On May 16, 2011, Mr. McCready filed a motion to dismiss the contempt action [Docket No. 131]. The Debtors filed an Amended Motion for Contempt on October 14, 2011 [Docket No. 200]. That matter has not yet been ruled upon.

Request to Withdraw the Reference: On February 23, 2010, the Debtors asked the United States District Court to withdraw the reference of two adversary proceedings, including the captioned one [Case Docket No. 69]. On March 11, 2010, Mr. McCreary opposed the withdrawal of the reference [Case Docket No. 75]. The District Court denied the withdrawal of the reference on April 21, 2010 [Case Docket No. 80].

Superintending and Supervisory Control: On March 28, 2011, Mr. McCready filed a motion in which he

> asks the Court to exercise superintending or supervisory control over the U.S. Trustee or, otherwise, to stay the bankruptcy case and trial of the adversary proceeding (#09-7021) until such time as Movant may file and prosecute a suitable mandamus or FOIA action:

Mr. McCready's complaint is that the United States Trustee has given him a copy of the recording of the §341(a) meeting but he wants a written transcript. He asks the court to use its §105 powers to take over the case from the United States Trustee. In paragraph 14 he states: "Movant has litigated FOIA issues a great deal."

On April 1, 2010 the Debtors filed a response in which they asked that the trial date (of the adversary proceeding) not be continued [Case Docket No. 112]. On April 4, 2011, the United States Trustee filed a thorough response [Case Docket No. 113] in which it points out that Rule 2003(c) provides: "Upon request of any entity, the United States trustee shall certify and provide a copy **or** a transcript of such recording at the entity's expense" (emphasis added). The response recites that Mr. McCready appeared at the September 15, 2009 meeting of creditors via telephone and questioned the Debtors [Response ¶ 2]. The United States Trustee has furnished Mr. McCready, at his request, certified copies of the recordings in this Bankruptcy case as well as certified copies of the recordings of the meetings of creditors in Case No. 02-70018, Case No. 03-70437, and Case No. 07-70210 [Response ¶ 8]. On April 21, 2011, the court denied Mr. McCready's motion [Case Docket No. 125].

Rule 2004 Examinations and Exemptions: On March 8, 2011, the Debtors filed a motion to keep Mr. McCready from conducting an examination of them under Rule 2004 [Case Docket No. 103]. The motion stated:

> On November 9, 2009 Creditor Kenneth A. McCready obtained an Order from this Court allowing Creditor to conduct 2004 examinations of the Debtors. The Order also allowed 30 days from the conclusion of the 2004 examinations for the Creditor to file any Objections to Debtors' exemptions, and to file any further adversarial Complaints.

To date, the Creditor Kenneth A. McCready had not scheduled nor conducted any 2004 examinations, despite 4 correspondences from Debtors' counsel, proffering 21 possible dates for such exam.

An adversary proceeding between the parties is set for trial on April 7, 2011. On that date the Debtors' bankruptcy case should end in discharge, partial discharge, denial of discharge or dismissal.

As of this date, March 8, 2011, there are thirty days left before the adversary trial and the end of the Debtors' case. Since a 2004 examination is to seek information to determine if there are Objections or Complaints that could be brought in the bankruptcy, a 2004 examination at this time (484 days since the Order granting leave to conduct 2004 examinations) is useless for its stated purpose.

On March 28, 2011, Mr. McCready filed a 13 page response to that motion [Case Docket No. 106] in which he vigorously opposed the motion and attacked the Debtors and their counsel.

By order entered April 14, 2011, the court stated:

It is hereby **ORDERED** that the Creditor Kenneth A. McCready is now denied leave to conduct 2004 examinations of the Debtors; additionally, Creditor Kenneth A. McCready is denied further time to file objections to the Debtors' exemptions.

Motion to Dismiss Case: On May 16, 2011, Mr. McCreary filed a motion to dismiss this bankruptcy case [Case Docket No. 129]. The motion and attachments total 194 pages. Although stated in vitriolic language, the grounds appear to be the same as the grounds for denial of the discharge as stated in Adversary Proceeding No. 09-7021. On May 23, 2011, the Debtors filed a response [Case Docket No. 152]. In addition to other responses, the Debtors note that the motion to dismiss was filed 665 days after the Bankruptcy petition was filed. On May 23, 2011, the Debtors filed a motion to strike the motion to dismiss because it was not properly served [Case Docket No. 154]. On June 6, 2011, Mr. McCready filed a response to the motion to strike, asserting he properly served the motion [Docket No. 162]. By order signed June 13, 2011, the court denied the Debtors' motion to strike Mr. McCready's motion to dismiss [Case Docket No. 166]. On June 6, 2011, Mr. McCready filed a motion to strike the Debtors' response to his motion to dismiss [Case Docket No. 164]. That motion was denied by order on June 13, 2011 [Case Docket No. 168].

On June 27, 2011, Mr. McCready filed a motion for "Summary Disposition" of the motion to dismiss [Case Docket No. 185]. That motion was denied on July 15, 2011 [Case Docket No. 190].

Interrogatories: On May 19, 2011 the Debtors filed a motion to quash Mr. McCready's interrogatories, request for production and requests to admit [Case Docket No. 146]. The Motion states that in connection with the motion to hold Mr. McCready in contempt, he served on the Debtors 25 interrogatories, 6 production requests, and 23 requests to admit which did not have anything to do with the contempt motion. On May 23, 2011, Mr. McCready filed a response [Case Docket No. 155] in which he "asks the Court to deny debtors' motion, admonish Ms. Morales to speak the truth herein, and rule on his pending motions in his favor." (Ms. Morales is

the attorney for the Debtors).  By order dated June 13, 2011, the court granted the Debtors' motion to quash [Case Docket No. 165].

On June 13, 2011 Mr. McCready filed "Respondent's Motion to Compel Contempt Movants to Respond to Respondent's First Set of interrogatories and Requests to Admit" [Case Docket 169] in which he asked the court to compel the Debtors to respond to the matters he had submitted in connection with the contempt motion.  On June 20, he filed a Motion for Leave to Conduct Discovery in Defense of Contempt "Contested Matter' and a Motion to Strike So-Called "Supplemental" Material Document [Case Docket No. 181].  On June 22, 2011 the Debtors filed a motion to quash the discovery [Case Docket No. 182] asserting that the discovery sought has nothing to do with the contempt motion.  On June 27, 2011, Mr. McCready filed a motion to compel the Debtors to respond [Case Docket No. 183].  The Debtors' motion to quash was granted on July 15, 2011 [Case Docket No. 187].  On July 15, 2011, the motion to compel, which is Case Docket No. 183, was denied [Case Docket No. 186].  An order of July 15, 2011 [Case Docket No. 189] further denies the motion in Case Docket No. 183.

<u>Motion to Compel Chapter 7 Trustee to Examine Acts and Conduct of the Debtors</u>:  On May 23, 2011, Mr. McCready filed a Motion to Compel Chapter 7 Trustee to Examine Acts and Conduct of the Debtors [Case Docket No. 156].  The court denied the motion by order dated June 13, 2011 [Case Docket No. 167].

6

# ATTACHMENT B

Procedural History of Adversary Proceeding 09-7021

Complaint:  On October 20, 2009, Kenneth A. McCready filed this adversary proceeding against Danny Lyle Becker, Jr., and Pamela Kay Bussell Becker, Debtors, Ector County Hospital District d/b/a Medical Center Hospital, Jesse Deleon and Shawna Deleon (nee Shawna Becker). The 20 page complaint contains 154 numbered paragraphs and concludes with the following prayer:

> WHEREFORE, Plaintiff-Objector respectfully asks that the Court enter its Order, declaring the Debtors are denied a discharge in this matter and, further, permanently barring them ("with prejudice") from filing a petition in bankruptcy again.

The complaint contained Exhibits A through F. The total filing, including exhibits was 183 pages. On May 3, 2010, the Debtors moved to strike all of the exhibits, principally because they related to other litigation and were not germane to this matter [Adversary Docket Nos. 59-64]. By orders dated June 6, 2010, the court granted the motions and struck Exhibits A through F of the Complaint [Adversary Docket Nos. 85-90].

On November 18, 2009, Defendant Danny Lyle Becker, Jr. filed an answer in which he denied all of Mr. McCready's complaints [Adversary Docket No. 4].  Mr. Becker also alleged that Mr. McCready was engaging in vexatious litigation stating:

> Defendant alleges that the Plaintiff is a vexatious litigant who has been sanctioned by the Seventh Circuit of Appeals (453 F3d 882 McCready v. Ebay Inc, 2006) and is still on the District Court's list of Restricted Filers (see attachment).  Additionally, Plaintiff has been denied a license to practice law by the Michigan Bar.  [for the last proposition, the Plaintiff cites: Kenneth A. McCready v. Michigan State Bar Standing Committee on Character and Fitness, 881 F. Supp 300 (W.D. MI 1995)]

Attached to the answer is an October 16, 2006 order of the United States District Court for the Northern District of Illinois preventing Mr. McCready from filing any documents in that court for a period of six months and until he pays a $2,500.00 fine imposed by the United States Court of Appeals for the Seventh Circuit levied on August 18, 2006.  After that, Mr. McCready "may petition the Executive Committee for leave to submit documents for filing."

Also on November 18, 2009, Ms. Becker filed an answer that was almost identical to Mr. Becker's answer [Adversary Docket No. 5].

On December 21, 2009, Mr. McCready filed a Motion to Strike and Motion for Summary Judgment [Adversary Docket No. 11] in which he asks that the "scandalous, immaterial or impertinent" matter in the answers be stricken and that a summary judgment be granted because a general denial is not a sufficient response under the Federal Rules of Civil Procedure. The Defendants filed a response on December 31, 2009 [Adversary Docket No. 12].  On May 13, 2010 [Adversary Docket No. 70], the court granted in part and denied in part the motion to strike.  The court struck the vexatious language from the original answer, denied the motion for

1

summary judgment on affirmative defenses and denied the motion to compel answers because the Defendants had filed amended answers as requested by the motion.

On February 23, 2010, Mr. Becker filed an amended answer to the complaint [Adversary Docket No. 22] in which he responds to each paragraph of Mr. McCready's complaint

On February 23, 2010, Mrs. Becker filed an amended answer [Adversary Docket No. 23], which is essentially the same as the amended answer filed by Mr. Becker.

On March 11, 2010, Mr. McCready filed a motion to strike the answers filed by Mr. & Mrs. Becker [Adversary Docket No. 28] asserting that the answers were not timely. The Debtors filed a response on March 23, 2010 [Adversary Docket No. 40] asserting that they were filed in response to complaints by Mr. McCready in his motion to strike [Adversary Docket No. 11] that their answers were too sparse. On May 13, 2010 [Adversary Docket No. 69], the court denied the motion to strike.

With permission of the court, Mr. Becker filed a Supplemental Answer to Complaint and a counterclaim against Mr. McCready on September 27, 2010 [Adversary Docket No. 144]. The counterclaim sought a determination that Mr. McCready's claim in this adversary proceeding is unsecured. On the same date and with permission of the court, Mrs. Becker filed a supplemental answer and counterclaim [Adversary Docket No. 145].

On May 9, 2011, Mr. McCready filed a motion for leave to amend his complaint [Adversary Docket No. 289]. As grounds for the motion, he basically repeats his accusations that the Debtors have committed fraud. Illustrative paragraphs of the motion read:

4. To any argument that it is "too long," plaintiff proposes that if the Beckers hadn't lived lifetimes of fraud, they wouldn't now be exposed to the light of day and, perhaps more importantly, because the entire document lays out a lifetime of Becker frauds, including fraud by omission and "fraudulent concealment," and "continuing concealment," the enhanced pleading requirements of Fed.R Civ.P 9 require such detail. …

11. The court will see, repeated throughout this proceeding, plaintiff's invocation of the federal "misprision of felony" stature, 18 U.S.C. sec. 4. He reminds Ms. Morales of it by citation during her false statements in covering up the Beckers' frauds and perjury in the 341 meeting, and it is entirely apropos in the matter. If this plaintiff does NOT call to the court's attention all of the frauds, perjury and miscellaneous felonies committed by Dan and Pam Becker and Jeanne Morales, he too would be guilty of that federal felony.

12. By this, too, plaintiff encourages the court to call to the attention of the U.S. Attorney and/or the FBI these willful violations of dozens of laws committed in this proceeding.

By order dated May 16, 201 the motion for leave to amend was denied [Adversary Docket No. 304].

On May 16, 2011, Mr. McCready filed a 44 page motion for summary judgment [Adversary Docket No. 299] against the Debtors. The Debtors filed a response on May 23, 2011 [Adversary Docket No. 316]. By order of June 15, 2011 the motion was denied.

<u>Jesse Deleon and Shawna Deleon</u>:  On November 18, 2009, Mr. & Mrs. Deleon filed answers that were almost identical to the answer filed by Mr. Becker [Adversary Docket Nos. 6, and 7].

With permission of the court, Jessie Deleon and Shawna Deleon filed amended answers to the Complaint on June 4, 2010 [Adversary Docket Nos. 101 and 102] in which they respond to each of the 154 sections of the Complaint and ask that it be dismissed as to them.

Jesse Deleon filed a motion for summary judgment on September 14, 2010 [Adversary Docket No. 135]. After a hearing and by order entered November 16, 2010, the motion for summary judgment was granted and ordered that Mr. McCready take noting against Jesse Deleon [Adversary Docket No. 166].

On February 3, 2011 [Adversary Docket No. 181], Shawna Deleon filed a motion for Summary Judgment which was substantially the same as the motion filed by Jesse Deleon. On March 10, 2011, an order granting her motion for Summary Judgment and finding that Mr. McCready taking nothing against Shawna Deleon was entered [Adversary Docket No. 199]. Mr. McCready filed a tardy answer to the motion on March 10, 2011 [Adversary Docket No. 204]. On March 28, 2011, Mr. McCready filed a motion to vacate the March 10, 2011 order [Adversary Docket No. 236]. The six page motion basically states that the motion for summary judgment was not timely filed. The motion to vacate was denied by order dated April 21, 2011 [Adversary Docket No. 279].

Ector County Hospital District:    On March 8, 2010, Ector County Hospital District d/b/a Medical Center Hospital filed a motion for summary judgment [Adversary Docket No. 25] which states that the Plaintiff is trying to collect a foreign judgment and alleges that the Medical Center Hospital is in some way liable to him under the Texas Uniform Fraudulent Transfer Act. The motion asserts several grounds upon which it feels that the Medical Center Hospital has no liability to the Plaintiff. Mr. McCready filed a response on March 29, 2010 [Docket No. 42] in which he complains that the Beckers had not responded to discovery and he saw no point in taking a deposition until he had responses to discovery. The disputed funds are in the registry of the Ector County court. Mr. McCready maintains that those funds were deposited by a corporation and represent money stolen from a corporation by Mr. Becker. On April 5, 2010, Mr. McCready filed a "Motion to Strike ECHD Motion for Summary Judgment, all So-called 'Evidence' and/or Supporting Affidavit" [Adversary Docket No. 47] in which he states in paragraph 3: "In a nutshell, every single thing that ECHD attempts to prove as a matter of fact is premised on or is itself inadmissible evidence" (emphasis in original). He also complains about not having enough discovery. On April 9, 201l, a supplemental affidavit was filed by the Ector County Hospital District [Adversary Docket No. 48] and a response was filed by the hospital district [Adversary Docket No. 49]. Mr. McCready filed a motion to strike the supplemental affidavit on April 19, 2010 [Adversary Docket No. 55], and a response to that motion was filed by the hospital district on April 27, 2010 [Adversary Docket No. 56]. By order dated May 13, 2010 [Adversary Docket No. 68], the court denied Adversary Docket No. 47 motion to strike. By order entered September 15, 2010 [Adversary Docket No. 136], the court granted the hospital district's motion for summary judgment. Mr. McCready filed a notice of appeal of the summary judgment on September 29, 2010 [Adversary Docket No. 148].

Motion to Require Defendants Dan and Pam Becker to Execute Waivers:  On December 21, 2009, Mr. McCready filed a Motion to Require Defendants Dan and Pam Becker to Execute Waivers [Adversary Docket No. 10], in which he sought to have the Debtors ordered to execute waivers so he could secure the information they supplied to governmental agencies in connection with their securing food stamps, unemployment benefits, Medicaid benefits, and Social Security

Disability benefits.  He asserted that Mrs. Becker was "conducting her eBay business earning as much as $1000 a day!"  He also asserted that: "Even if the Beckers answer discovery concerning these things, they are such *utterly unconscionable liars* that this begs for official corroboration of this sort."

On January 5, 2010, the Debtors filed an answer to the motion to require [Adversary Docket No. 13] in which they point out the requested information Mr. McCready

> is seeking is relevant in a different case, a *Qui Tam* proceeding filed in District Court (MO-08-CV-010, Western District of Texas) in which the United States has declined to intervene.  In that action Plaintiff asserts that Defendants have improperly received benefits under the Food Stamp Act, Social Security Disability, Unemployment and Medicaid.

> The Judge in that case has already ruled twice on the matter of obtaining the Defendants medical records, once when he quashed a subpoena to the Texas Health and Human Services Commission and again when he ruled on the Plaintiff's *Motion to Vacate* that decision. [Reference is made to attachments A and B]

> The information that Plaintiff is seeking to obtain is private health information, protected under both State and Federal law.  None of the information is relevant to the current adversary proceeding.

> Given the history between the two parties, Defendants believe that Plaintiff will use the information for improper means, contacting Doctors and harassing individuals who know the Defendants.  Plaintiff has already been sanctioned in the District Court case with regards to improper contact with the Defendants. [Reference is made to attachment C]

> Additionally, during a prior bankruptcy case, once Plaintiff obtained the information regarding Defendant Pamela Kay Bussell Becker's employment, he contacted the employer in an attempt to harass her and get her employer to fire her.  [Reference is made to attachment D].

A hearing on the motion to compel was held on February 23, 2010.  For the reasons stated on the record, the motion to compel was denied.  The order of denial was entered on March 15, 2010 [Adversary Docket No. 32].  On June 21, 2010, Mr. McCready filed a Rule 60 Motion to Alter or Amend Order of March 15, 2010 [Adversary Docket No 115].  The Beckers filed a response to that motion on July 2, 2010 [Adversary Docket No. 119].  By Memorandum and Order entered on August 6, 2010 [Adversary Docket No. 124], the court denied the Rule 60 motion.

Motions for default judgment:  On February 16, 2010 [Adversary Docket No. 21], Mr. McCready filed a Motion for Default, or in the Alternative, to Compel Defendants to Respond to Plaintiff's First Set of Interrogatories and Requests to Admit [Adversary Docket No. 21].  The motion states that on January 8, 2010, he sent interrogatories and requests to produce to the Beckers, to Jesse Deleon and to Shawna Deleon.  Copies of the interrogatories were attached as exhibits to the motion. The motion states that no response was received within 30 days and that he made five unsuccessful attempts to contact the Debtors' attorney about this matter.  The motion states that if Mr. McCready is required to appear in court on this matter that the court order the Defendants to advance to him his costs of transportation and per diem.  On March 10, 2010, the court denied the motion as duplicative of orders entered in the main case [Adversary Docket No. 27].

4

On June 6, 2010 [Adversary Docket No. 109], Mr. McCready filed a Motion for Default Judgment against all Defendants asserting that they had not complied with his discovery requests.  On June 15, 2010 [Adversary Docket No. 113] the Defendants filed a response in which they assert that they have complied with the discovery requests to the best of their ability, but that some of the items requested are not in their custody or control.  After a hearing, Mr. McCready's motion was denied by Order entered August 5, 2010 [Adversary Docket No. 122].

On December 20, 2010, Mr. McCready filed a motion styled: "Motion for Default or, in the Alternative, Motion for Order to Show Cause Why Defendants Danny Lyle Becker, Jr., Pamela Kay Bussell Becker and Shawana Becker, a/k/a Shawna Deleon Should not be held in Contempt and Motion to Conduct Depositions of EBay and Pay Pal.  The reason stated in the motion was that the named parties had refused to cooperate in discovery. The clerk docketed the motion for default at Adversary Docket No. 168, the motion for contempt as Adversary Docket No. 169 and the motion to conduct depositions as Adversary Docket No. 169.  The Debtors filed a response to all three items on February 2, 2011 [Adversary Docket No. 180].  Following a hearing the court entered an order on February 9, 2011 granting the motion to take depositions of EBay and Pay Pal, but denied the motions for default judgment and contempt [Adversary Docket No. 185].

Discovery:  On March 11, 2010, Mr. McCready filed a Motion to Extend Discovery Cutoff Dates and Trial [Adversary Docket No. 29].  On March 23, 2010 the Debtors filed a response in which they agreed to the motion because "the primary individual with the information necessary to complete discovery has been very ill, and has been unable to effectively assist counsel in the preparation of discovery answers" [Adversary Docket No. 39].  At a hearing on March 23, 2010, the court abated the trial setting until the motion for summary judgment was concluded.  By order dated May 12, 2010 [Adversary Docket No. 67], the court extended the discovery deadlines.

The docket sheet reflects a number of other discovery disputes.  For brevity, they have been omitted.

Contempt:  On June 21, 2010, Mr. McCready filed a motion to hold the Debtors' attorney, Jeanne Morales, in contempt or otherwise punished [Adversary Docket No. 114] in which he accuses of her of lying about a number of matters.  In paragraph 3 of his 5 page complaint, he states:

> Now, Ms. Morales' lying has much more dire consequences.  So far, based on her lies, three of plaintiff's claims have now been disallowed, one interrogatory quashed, his right to jury trial denied,[12] and two adversary answers permitted to be amended, all in denial of due process because of her lies.

In the prayer to the motion, Mr. McCready states: "Plaintiff also asks the court to refer the matter to the United States Attorney for this district for prosecution; it appears an example needs be made."

---

[12]It should be noted that a plaintiff bringing a non-dischargeability complaint under §523 or an objection to discharge under §727, has no right to a jury trial as these remedies are equitable rather than legal in nature. "Dischargeability of a debt is an equitable proceeding which does not entitle either side to a jury."  *Gaines v. Thomas (In re Thomas)* 235 B.R. 864 at 866 (Bankr. N.D. Tex. 1999) [citing cases].

On July 2, 2010 [Adversary Docket No. 118] Ms. Morales, on behalf of the Debtors, filed a response in which she points out that most of Mr. McCready's allegations had been ruled on by the court in a previous motion for contempt which he had filed.  To the extent he had made new allegations, they were denied.

By order of July 8, 2010, the court denied Mr. McCready's contempt motion [Adversary Docket No. 120].  The court pointed out that Mr. McCready's principal objection was that some motions served on him were not mailed until the day after the date of service noted on the motion.  The court stated:

> The Court has reviewed the docket and even if the Plaintiff is correct and the motions at issue were not served until a day or two after the date listed on the certificate of service, the Plaintiff had ample time to respond before the Court signed the orders granting the motion.  The Court signed the orders between 24 and 28 days after the date the Plaintiff alleges the motions were served.  Each motion required the Plaintiff to respond within 21 days or the motion would be granted without a hearing.  The Plaintiff failed to respond during the objection period and the Court correctly entered the orders granting the motions.  Thus even if the certificates of service were incorrect, the Plaintiff can only blame himself for not filing objections before the orders were entered.

On March 10, 2011, Mr. McCready filed a Motion to Disqualify Attorney Jeanie Morales [Adversary Docket No. 209].  The substance of the five page motion is shown in the first paragraph which reads:

> The Beckers have perjured themselves, repeatedly and willfully.  Ms. Morales has suborned their perjury and continues to prosecute their fraudulent bankruptcy petition, while knowing full well that they are perjuring themselves and that she is violating her ethical obligations to the court and plaintiff.

After a hearing the court denied the motion to disqualify by order dated May 11, 2011 [Adversary Docket No. 293].

Mr. McCready's assertion that his claim is secured:  In the Complaint, Mr. McCready asserts that his claim is secured by assets of the Debtors.  On February 2, 2011, the Debtors filed a Motion for Default Judgment [Adversary Docket No. 182] asserting that on September 27, 2010 they, with court permission, filed a Supplemental Answer and Counterclaim.  In the counterclaim they challeng Mr. McCready's assertion that his claim is secured and argue that because Mr. McCready never filed an answer to that counter claim, they are entitled to a default judgment finding that his claim is unsecured. The certificate reflects that notice of the motion was sent to Mr. McCready both by regular and by certified mail.  By order entered March 10, 2011 [Adversary Docket No. 200], the court decreed that Mr. McCready "has no secured claim, but only an unsecured claim, which will be liquidated and declared dischargeable or nondischargeable after trail of this adversary proceeding.  Mr. McCready filed a tardy response on March 10, 2011 [Adversary Docket No. 205].  On March 28, 2011, Mr. McCready filed a motion to vacate the March 10, 2011 order [Adversary Docket No. 237].  The seven page motion essentially asserts that the motion for summary judgment was not timely.  The motion to vacate was denied by order entered April 21, 2011 [Adversary Docket No. 280].

<u>Mr. McCready's claims under the Texas Uniform Fraudulent Transfer Act</u>:  On February 9, 2011, Mrs. Becker filed a motion for summary judgment asserting that Mr. McCready's allegations under the Texas Uniform Fraudulent Transfer Act contained in the Complaint should be denied because under, §548 of the Bankruptcy Code, only a Trustee has standing to bring fraudulent transfer actions [Adversary Docket No. 183].  On the same date, Mr. Becker filed a similar motion [Adversary Docket No. 184].  Notice of the motions was sent to Mr. McCready by regular and certified mail.  Orders dismissing the claim under the Texas Uniform Fraudulent Transfer Act were entered as to Mrs. Becker and Mr. Becker on March 10, 2011 [Adversary Docket Nos. 201 and 202].  Mr. McCready filed a tardy response to both motions on March 10, 2011 [Adversary Docket No. 206].  On March 28, 2011 Mr. McCready filed a motion to vacate the March 10, 2011 orders [Adversary Docket No. 238].  The seven page motion essentially asserts that the motions for summary judgment were not timely filed.  The motion to vacate was denied by order entered April 21, 2011 [Adversary Docket No. 281].